[S. F. No. 7922. Department One.—January 29, 1918.]

DAVID ASH, Appellant, v. SOO SING LUNG, Respondent.

WITNESSES—IMPEACHMENT—SHOWING INTEREST OF WITNESS—LAYING FOUNDATION.—Where on the cross-examination of M., a witness for the defendant, in an effort to show interest on the part of the witness, he had denied that he had interviewed or talked with other witnesses for the defendant, or had gone around trying to get witnesses for him, and thereafter S., a witness for plaintiff in rebuttal had been allowed, without objection, to testify that M. had conversed with him and requested him to become a witness, the trial court did not err in sustaining defendant's objection to the further question to the witness S., "What did he (M.) say to you?" the question calling for the declarations of the witness M., and it being a settled rule that before impeaching a witness by evidence of his declarations showing his interest, the foundation for such inquiry must be laid by directing the attention of the former witness to the particular statements sought to be proven, with circumstances of time, place, and persons present, so as to give the witness sought to be impeached full opportunity for explanation.

ID.—HARMLESS REJECTION OF CUMULATIVE EVIDENCE.—After M., a witness for the defendant had, on cross-examination, denied that he had conversed with other witnesses for defendant, or talked to them about becoming witnesses for the defendant, and M. had been contradicted by S., a witness for plaintiff in rebuttal, the trial court might well have permitted the preliminary question propounded to another witness for the plaintiff in rebuttal, as to whether M. had not talked to him about testifying in the case, but since the evidence would only have been cumulative, its exclusion was not sufficiently harmful to justify a reversal.

CONTRACT—BREACH—DAMAGES—DUTY OF INJURED PARTY TO MINIMIZE
    LOSS—INSTRUCTION.—In an action by the owner of an orchard
    against the purchaser of the growing crop of fruit for damages
    caused by the breaking of the branches of the trees owing to the
    purchaser having failed to perform an obligation of the contract
    which required him to tie up the trees so as to prevent the limbs
    being broken by the increasing weight of the fruit, an instruction
    which in effect told the jury that the plaintiff could recover no
    damages arising from the defendant's breach if the plaintiff himself
    could have done what the defendant ought to have done, but failed
    to do, goes beyond the rule requiring one threatened with injury
    through breach of an obligation to do what he reasonably can to
    prevent or minimize the loss, and is erroneous.

ID.—DUTY OF PLAINTIFF TO MINIMIZE LOSS—ERRONEOUS INSTRUCTION
    NOT CURED.—An erroneous instruction on the duty of the plaintiff
    to minimize a threatened loss by breach of an obligation was not
    cured by another instruction which directly contradicts the former
    one, on the particular point in which the former was erroneous,
    since the jury could hardly have failed to be led into confusion
    by the conflicting instructions.

APPEAL from a judgment of the Superior Court of
Fresno County, after denial of a new trial. George E.
Church, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, Carl E. Lindsay, and M. G. Gallaher, for
Appellant.

M. B. Harris & E. M. Harris, and T. R. Thomson, for Re-
spondent.

RICHARDS, J., *pro tem.*—This is an appeal from a judg-
ment in favor of the defendant in an action to recover
damages for the breach of a contract. The plaintiff was the
owner of a peach orchard in the county of Fresno upon which
there was growing a crop of peaches during the year 1914.
In the month of July of that year the plaintiff and the de-
fendant entered into a contract in writing by the terms of
which the defendant agreed to purchase the said growing
crop of peaches, and to harvest and market the same upon
the terms and conditions set forth in said contract. Among
these were the following stipulations: "Said second party shall
at his own cost and expense tie up the trees, the twine to be

furnished by said second party therefor. . . . It is expressly understood and agreed that all of the work herein designated shall be done at the time and in the manner herein set forth, under the direction of the said party of the first part, and at such times as he shall designate and to his satisfaction." The defendant, upon the execution of this contract, entered into possession of the premises and proceeded with the perform-ance of his part of the agreement, except that he did not tie up a considerable number of the trees so as to prevent the breaking of the limbs from the increasing weight of their fruitage, as a result of which the limbs of such trees were overweighted and broken down, and the orchard thereby mate-rially injured. The plaintiff sued to recover damages for this alleged breach of the defendant's contract and conse-quent injury to his orchard. The defendant in his answer denied the existence of any agreement on his part to tie up the trees, and denied that he had failed or refused to do so; and denied that any of their limbs were broken and destroyed; and affirmatively alleged that any injury and damage which had been occasioned to the trees was caused by the fault and negligence of the plaintiff himself; and in the course of this averment stated that "from and after the time the said agree-ment was entered into by said plaintiff and said defendant, and during all of the time the said injury and damage were being done, the said plaintiff knew that said trees were be-coming broken and damaged." The cause was tried before a jury, which returned a verdict in the defendant's favor, and from the judgment entered thereon and after denial of the plaintiff's motion for a new trial the latter prosecutes this appeal.

The appellant presents two points for our consideration upon this appeal. The first relates to an alleged error of the court in the exclusion of certain evidence offered on plain-tiff's behalf. During the trial a witness named E. H. Mor-gan was called and examined on behalf of the defendant. Upon cross-examination he was asked the following questions, and gave the following answers: Q. "Haven't you in-terviewed witnesses for the defendant?" A. "No, sir." Q. "Haven't you talked to any of his witnesses?" A. "No, sir, I haven't." Q. "Haven't you gone around trying to get witnesses for him?" A. "No, sir, I haven't." The evi-dent purpose of these inquiries was to show interest on the

part of the witness in the success of the defendant's case. Thereafter in rebuttal the plaintiff produced a witness named Saffell, who was asked by plaintiff's counsel if he knew E. H. Morgan, and answered that he did. He was then asked if since the damage done to plaintiff's orchard Mr. Morgan had any conversation with him with reference to his becoming a witness in the case. He answered in the affirmative. He was then asked if Mr. Morgan requested him to become a witness, and he answered that he did. Thus far no objection had been made to the foregoing questions or answers. He was then asked the question, "What did he say to you?" to which the defendant objected upon the ground that it was irrelevant, incompetent, and immaterial. The court sustained this objection. It is not contended by the appellant that the objection made was not broad enough in terms to cover the specific objection that the proper foundation for the question had not been laid; but even if that criticism had been urged, it would not in our opinion be tenable, particularly since the record discloses that the court was fully advised by the discussion attending the objection as to its scope. The court did not err in sustaining the objection. The purpose of the inquiries put to this witness being that of showing the interest of the witness Morgan in defendant's case, that purpose was completely subserved by the testimony of the witness Saffell, given without objection, to the effect that he had been interviewed by Morgan and requested to become a witness in the case. The particular question objected to called for declarations of the witness Morgan, and it is a well-settled rule that when a witness is sought to be impeached by evidence of his declarations showing his interest in the case, the foundation for such an inquiry must first be laid by directing the attention of the former witness to the particular statements sought to be proven, with such circumstances of time, place, and persons present as will give the witness intended to be impeached a full opportunity for explanation. (Code Civ. Proc., sec. 2052; 2 Wigmore on Evidence, sec. 953; *Silvey* v. *Hodgdon,* 48 Cal. 185; *Fagan* v. *Lentz,* 156 Cal. 681, [20 Ann. Cas. 221, 105 Pac. 951]; *Estate of Bedford,* 158 Cal. 145, [110 Pac. 302].) The case of *Lewis* v. *Steiger,* 68 Cal. 200, [8 Pac. 884], chiefly relied upon by appellant as laying down a different rule does not in fact do so, since in that case the decision

states that the record discloses that the proper foundation for the impeaching testimony was in fact laid.

Following the witness Saffell the plaintiff produced two other witnesses named Vickery and Eudaly, of the first of whom the question was asked as to whether the witness Morgan "had talked" to him about testifying in the case. To this question the defendant urged the same objection as before, which the court sustained. Of the witness Eudaly the same question was asked, and this witness was permitted to answer it affirmatively, without objection; but when asked for the conversation, the former objection was urged and sustained. The trial court might well have permitted the preliminary question asked of the witness Vickery to have been answered, but its error, if any, in refusing to do so was harmless for several reasons. In the first place the interest of the witness Morgan in the defendant's case had already been shown by the preceding testimony given by the witness Saffell without objection, and it was further shown by the answer of the witness Eudaly, given without objection, that he had been "talked to" by Morgan. The addition of like evidence on the part of the witness Vickery would only have been cumulative, and for that reason the exclusion of it would not be sufficiently harmful to justify a reversal of the case. (*People* v. *Emmons*, 7 Cal. App. 685–694, [95 Pac. 1032].) Besides, it is evident from the record that the question was purely preliminary to one calling for declarations on the part of the witness Morgan, and which, as we have seen, would have been inadmissible for the reasons already given. For the same reasons the final question asked of the witness Eudaly was, upon objection, properly excluded.

A much more serious contention on the part of the appellant arises over the alleged error of the trial court in the giving of a certain instruction to the jury. There was evidence in the case sufficiently tending to show that the defendant did not tie up a considerable number of the larger of the fruit-laden trees, as a result of which their branches became badly broken. There was also evidence tending to show that shortly after the contract with the defendant was entered into, and after the latter had gone into possession of the premises, the plaintiff visited the orchard and then observed that numbers of the trees were becoming overweighted with their burden of fruit, and were in danger of being broken;

and that he directed the attention of the defendant's employees to the matter, and insisted upon the tying being done, and even went to the extent of showing how the same should be done; and was then assured that it would be attended to. The evidence further tends to show that upon a later visit, not long thereafter, the plaintiff saw that the defendant's agreement in that regard was not being kept, and that numbers of the trees were already broken, and that others were in imminent danger of breaking. The plaintiff did not himself act upon the discovery of these facts in the way of taking any steps to avert further injuries to his trees by tying them up himself. The defendant in his pleading, proof, and argument sought to invoke the rule of law which renders it the duty of one who is threatened with an injury of his property through the breach of an obligation by another, to do everything in his power to prevent or minimize the loss consequent upon such breach, and if he suffers injury by failing to take these precautions he cannot recover for such damages as are the direct result of such failure on his part. In support of this contention before the trial court the defendant requested and the court gave the following instruction:

"You are instructed that the law requires that the party claiming to be injured shall do whatever he reasonably can, and improve all reasonable opportunities to lessen the alleged injury. . . .

"If you find from the evidence that the defendant failed to tie the trees according to the directions of plaintiff, or at the times designated by him, and if you also find from the evidence that plaintiff knew of such failure on the part of defendant at the time of such failure, and if you also find from the evidence that plaintiff could himself have tied or caused said trees to be tied, and if you further find that he failed to do so, then in such event, your verdict must be for the defendant."

Conceding that the rule contended for by the defendant requiring one threatened with injury to his property through the breach of an obligation respecting the same undertaken by another, to do all in his power to prevent or minimize the loss to himself impending upon such breach, to be a correct statement of the law, it must be apparent that the foregoing instruction went far beyond the boundaries of this rule; for in effect it charged the jury that the plaintiff could recover

no damages from the defendant for injuries arising from the latter's breach of his obligation if the plaintiff could have done himself what the defendant ought to have done, but failed to do under the terms of his contract. A rule of law thus broadly stated would place a premium upon the defendant's breach of his agreement, and results in entirely transferring to the plaintiff's shoulders the burden of the defendant's violated obligation. The utmost extent to which the rule invoked by the defendant in this case should have been applied would have been in the form of an instruction that the defendant was bound to respond in damages to the full extent of whatever injuries the plaintiff had sustained through the breach of the obligation, less such an amount of such damages as the jury might find could have been prevented or minimized by the plaintiff's own action in the use of ordinary care and prudence to avoid the effects and consequences of the defendant's breach of his obligation, after discovering the impending danger of injury to his property resultant upon such breach. The respondent, however, contends that the vice of the foregoing instruction, conceding it to be faulty, was offset or removed by the following instruction, given at plaintiff's request:

"Gentlemen of the jury, if you find from the evidence that the defendant in this action agreed with the plaintiff in this action to tie up the trees on said premises, under the direction of plaintiff, and at such times as plaintiff should designate, and if you further find that the plaintiff gave such instructions, and if you further find that the defendant neglected so to do, you are instructed that your verdict should be for the plaintiff for such damage, if any, as was proximately caused thereby, not exceeding, however, the amount prayed for, namely, $4,628.00."

The utmost that may be said of this instruction is that it is in direct contradiction of the former one, and that it cannot be held to have cured the error therein, since it entirely omits all reference to the very matter of the plaintiff's duty to avoid injury, which constitutes the vice of that instruction. The jury could hardly have failed to be led into confusion by these conflicting instructions, and hence the error in giving the former instruction must be held to have been prejudicial. The respondent's contention that such error would be cured by the general verdict of the jury in defendant's favor upon

all of the issues in the case has no merit, in view of the fact that the uncontradicted evidence in the case shows that some at least of the damages complained of arose after the date of the contract between the parties had been entered into, and was due to the defendant's breach of his obligation to properly tie up the branches of the plaintiff's trees. This being so, the court's erroneous instruction went to the very meat of the case, and obviously conduced to the verdict in the defendant's favor.

Judgment and order reversed.

Sloss, J., and Shaw, J., concurred.